GALEN INSTITUTE, LLC ET AL.      )    CASE NO. 3:02CV-1637(JCH)

v.                               )

                                      2005 APR 29 P 2: 50

VALERIE LEWIS ET AL.             )    APRIL 26, 2005

                                      U.S. DISTRICT COURT
                MEMORANDUM OF LAW      BRIDGEPORT, CONN
                IN OPPOSITION TO
          MOTION FOR SUMMARY JUDGMENT

     The plaintiffs Galen Institute, LLC and Sandra J. Lattanzio

hereby submit, pursuant to Federal Rule of Civil Procedure 56 and

Local Rule of Civil Procedure 56(a)(2), the following memorandum of

law in opposition to the defendants' motion for summary judgment

dated February 7, 2005.

I.   STANDARD OF REVIEW

     The summary judgment movant is entitled to judgment only if "the

pleadings, depositions, answers to interrogatories, and admissions on

file, together with the affidavits, if any, show that there is no

genuine issue as to any material fact and that the moving party is

entitled to a judgment as a matter of law."   Federal Rule of Civil

Procedure 56(c).

II.  DISCUSSION

A.   THE FIRST THREE COUNTS OF THE PLAINTIFFS' AUGUST 28, 2003 AMENDED
COMPLAINT STATE A CAUSE OF ACTION, AND ARE SUPPORTED BY EVIDENCE.

     In Village of Willowbrook v. Olech, 528 U.S. 562 (2000), the

United States Supreme Court recognized that a successful equal

protection claim may be brought by a "class of one," where the

plaintiff alleges that it has been intentionally treated differently

from others similarly situated and that there is no rational basis for the difference in treatment. Id. at 564. The defendant's "irrational and wholly arbitrary" behavior, apart from its subjective motivation, was sufficient to state a claim for relief under traditional equal protection analysis. Id. at 565.

Olech requires no showing of selective treatment based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure. The irrational basis underlying the selective treatment is sufficient to establish such a claim. See African Trade & Information Center, Inc. v. Abromaitis, 294 F.3d 355 (2nd Cir. 2002).

The standard equal protection analysis requires proof that similarly situated individuals were treated differently. Bryan v. City of Madison, 213 F.3d 267 (5th Cir. 2000).

Olech does not require the plaintiff to identify in its complaint actual instances where others have been treated differently. A general allegation of disparate treatment is sufficient. DeMuria v. Hawkes, 328 F.3d 704, 707 (2nd Cir. 2003).

In the present action, James J. Lattanzio, Jr. (hereinafter referred to as "Lattanzio"), sole member of the plaintiff Galen Institute, LLC (hereinafter referred to as "Galen"), avers that the defendants, acting under color of their authority as officials of the state of Connecticut Department of Higher Education (hereinafter and

2

intermittently referred to as "DHE"), selectively mistreated and
discriminated against him and said limited liability company, which
company operates an occupational school of massage therapy.  His
testimony in paragraphs 22 through 25, 27, 28, 35, 45 and 80, among
others, recites how the defendants compelled Galen to effect costly
changes to its school catalog, enrollment materials, grading system
and admissions policies.  Furthermore, Lattanzio's testimony
discloses that these same subjects of compulsory change were approved
prior to and after the defendant Lerner's period of tenure as
overseer of Galen, which actions prompt a question of the existence
of a rational basis for such compulsion.  Still further, this
testimony of Lattanzio demonstrates that these same compulsory
changes inexplicably were not visited upon Connecticut Center for
Massage Therapy, the major Galen competitor in the Connecticut
massage therapy occupational education market.

B.   THE FOURTH, FIFTH AND SIXTH COUNTS OF THE PLAINTIFFS'
AUGUST 28, 2003 AMENDED COMPLAINT STATE A CAUSE OF ACTION, AND
ARE SUPPORTED BY EVIDENCE.

A governmental deprivation that comports with procedural due
process may still give rise to a substantive due process claim upon
allegations that the government deliberately and arbitrarily abused
its power, and such substantive due process claim may be maintained
only where the plaintiff has been deprived of a "particular quality
of property interest."   Independent Enterprises, Inc. v. Pittsburgh
Water and Sewer Authority, 103 F.3d 1165, 1179 (3rd Cir. 1997).

3

The plaintiffs contend that the economic livelihood, ensuing from their property interest in Galen Institute, LLC, rises to that level of property interest meriting substantive due process protection. The Lattanzio affidavit testimony, particularly paragraphs 22 through 25, 28, 35, 45 and 80, is replete with material concerning the defendants' deliberate and arbitrary abuse of its regulatory power. The defendants compelled only Galen Institute to adopt a pass/fail grading system, while failing to apply such a requirement to Connecticut Center for Massage Therapy, a leading competitor in the massage therapy occupational academic field in Connecticut. Furthermore, the defendants required Galen Institute to amend its school catalogs and enrollment contracts, from prior forms which had been approved by these very same defendants, as well as adhere to clock hour and graduation burdens finding no provenance in state statute or regulation and not burdening competitor schools. These acts portray more than the rote, utterly irrational transgressions typically exercised by these department janissaries, but, the plaintiffs contend, should be more appropriately discerned as a pattern of deliberate and arbitrary exercise of the department's regulatory power. See the affidavit testimony at the aforementioned paragraphs wherein Lattanzio recites that the defendants had compelled Galen Institute to essentially dismantle previously approved forms, with no rational explanation of the purpose underlying such compulsion.

4

C.  THE DEFENDANTS ARE ENTITLED TO NEITHER ABSOLUTE NOR
QUALIFIED IMMUNITY.

The defendants submit in their February 7, 2005 memorandum of
law in support of their motion for summary judgment that they all
enjoy qualified immunity from the consequences of their illegal acts.
The defendants characterize the quality of their respective duties in
section IIID of said memorandum as having been performed in their
capacities as "official [sic] and employees of DHE."  The defendants
appear to contend that because they were carrying out their duties in
their official capacities, they are immune from liability.  The
defendants advance similar claims in section IIIE of said memorandum.

The plaintiffs originally brought by complaint the subject
action against the defendants in both their individual and official
capacities.  The defendants moved to dismiss that complaint by motion
to dismiss dated on or about December 16, 2002.  The court dismissed
on July 7, 2003 those counts of the complaint alleging causes of
action against these defendants in their official capacity.  The
court, in so dismissing such counts, also ordered the plaintiffs to
amend their complaint, which they did on August 28, 2003.  The
plaintiffs' amended complaint asserted numerous causes of action
against all three defendants strictly in their individual capacities.
That fact alone seemingly should dispatch with finality the
defendants' claims in sections IIID and IIIF of their memorandum.
However, the concepts of immunity merit further discussion.

5

Personal capacity suits seek to impose individual liability upon a government officer for actions taken under color of state law. Hafer v. Melo, 502 U.S. 21, 25 (1991).  To establish personal liability in a section 1983 action, it is enough to show that the official, acting under color of state law, caused the deprivation of a federal right.  Id.  Officials sued in their personal capacities, unlike those sued in their official capacities, may assert personal immunity defenses such as objectively reasonable reliance on existing law.  Id.  The U.S. Supreme Court has refused to extend absolute immunity beyond a very limited class of officials, including the president of the United States, legislators carrying out their legislative functions, and judges carrying out their judicial functions.  Id. at 29.  State executive officials are not entitled to absolute immunity for their official actions.  Id.  "In several instances, moreover, we have concluded that no more than a qualified immunity attaches to administrative employment decisions, even if the same official has absolute immunity when performing other functions."  Id.  Finally, the Eleventh Amendment does not preclude personal liability suits in federal court.  State officials, sued in their individual capacities, are "persons" within the meaning of section 1983.  Id at 31.

The doctrine of qualified immunity shields government officials from liability for civil damages when their conduct does not violate clearly established statutory or constitutional rights of which a

reasonable person would have known.  <u>African Trade & Information

Center, Inc. v. Abromaitis,</u> 294 F.3d 355, 359 (2nd Cir. 2002).  The

approach suggested by the Second Circuit is to first determine

whether the plaintiffs alleged a violation of a constitutional right,

and then, if they have, to determine whether such right was clearly

established at the time of the alleged violation.  <u>Id</u>. at 359.  Three

factors must be considered in evaluating whether the right was

clearly established at the time of the section 1983 violation: (1)

whether the right in question was defined with reasonable

specificity; (2) whether the decisional law of the Supreme Court and

applicable circuit courts support the existence of the right in

question; and (3) whether under pre-existing law a reasonable

official would have understood her acts were unlawful.  <u>Id</u>. at 360.

   In the present action, the plaintiffs have alleged in the first

three counts of their August 28, 2003 amended complaint a violation

of section 1983 as a result of violation of the equal protection

clause of the Fourteenth Amendment to the U.S. Constitution.  The

right of the plaintiff Galen Institute, LLC to be free from selective

prosecution, enforcement or regulation by state governmental

officials was well established when the defendant Brenda Lerner

required Galen Institute to re-write and install various policies,

operating methods, practices and procedures.  The United States

Supreme Court had decided <u>Village of Willowbrook v. Olech</u>, 528 U.S.

562 in 2000, in which opinion the court recognized the successful

equal protection claim brought by the appellee, who constituted a "class of one," where the appellee alleged that she had been intentionally treated differently from others similarly situated, and that there was no rational basis for that disparate treatment. Village of Willowbrook v. Olech, 528 U.S. 562, 564 (2000).

When the defendant Lerner again requested Galen Institute in 2002 to change the very same materials and procedures that she had approved one year earlier, the principles of Olech were established, and should have afforded clear guidance to these state officials in the exercise of their regulatory duties.  When the defendant Lerner failed to require any other authorized massage therapy school or occupational school to abide by the same standards she had imposed on Galen Institute, such failure constituted the brand of selective enforcement warranting the obloquy of the Supreme Court in Olech.

When the defendant Jonas Zdanys in 2002 required Galen Institute to adopt a numerical grading system, without imposing such requirement on any other authorized massage therapy school or occupational school, such act constituted the brand of selective enforcement disparaged by the Supreme Court in Olech.

These acts and omissions of Lerner and Zdanys, and by Lewis, as their principal, all were perpetrated after Olech was decided.  The rights of Galen Institute to be free from such selective enforcement were defined by the Supreme Court with reasonable specificity; and such right was supported by the Supreme Court and the applicable

circuit courts (see <u>Village of Willowbrook v. Olech</u>, 528 U.S. 562

(2000); <u>African Trade and Information Center, Inc. v. Abromaitis</u>, 294

F.3d 355 (2nd Cir. 2002).  These defendants knew, or reasonably should

have understood, that at the time these acts and omissions were

perpetrated, such acts and omissions were unlawful.  As such, these

defendants cannot seek shelter behind the shield of qualified

immunity.  The pervasive cloud of mediocrity which is suffused across

the landscape of state government cannot withstand redress behind the

false tower of qualified immunity.

D.  THE SEVENTH AND EIGHTH COUNTS OF THE PLAINTIFFS' AUGUST 28, 2003
AMENDED COMPLAINT STATE A CAUSE OF ACTION, AND ARE SUPPORTED BY
EVIDENCE.

The seventh count of the amended complaint sets forth a theory

of tortious interference with a contractual relationship against the

defendants Lewis and Lerner.  The protected contractual relationship

existed between the plaintiff Galen Institute, LLC and COMTA, the

accrediting agency engaged by Galen to perform the accreditation

process.

As borne out by paragraph 59 of the Lattanzio affidavit

testimony, COMTA failed to verify the financial status of Galen

Institute, in turn, as a result of the defendant Lerner's

misrepresentations to the COMTA staff during the March 25, 2002 COMTA

onsite inspection.  Such representations may constitute the

wrongdoing inherent in a theory of intentional interference with a

contractual relationship.

To establish a claim for tortious interference with a contractual relationship the plaintiff must prove that the defendant's conduct was in fact tortious. Blake v. Levy, 191 Conn. 257, 261 (1983). This may be satisfied by proof that the defendant was guilty of fraud, misrepresentation, intimidation or molestation, or that the defendant acted maliciously. Id. at 261. "We think the better reasoned approach requires the plaintiff to plead and prove at least some improper motive or improper means." Id. at 262. The defendant Lerner's misrepresentations constitute just that type of act encompassed by Blake in a theory of intentional interference with a contractual relationship. The other essential elements are that a business relationship existed, and that the defendant, knowing that such relationship existed, intentionally sought to interfere with it. Harry A. Finman & Son v. Conn. Truck & Trailer Service, 169 Conn. 407, 415 (1975). When the defendant Lerner made such misrepresentations to the COMTA evaluators, she knew, or reasonably should have known, that she was meddling in the accreditation process between Galen Institute, LLC and COMTA.

The eighth count is valid in that it rests upon the act of wrongful probation. As discussed earlier in this memorandum, the defendant, in demanding compliance by Galen of certain requirements, such as the reprinting of school catalogs and other materials, requiring the numerical grading system and other such spurious demands, made no effort to enforce such requirements against other

10

similarly situated occupational schools, and furthermore made such demands after having approved previously the very same materials. This irrational selective enforcement forms some of the bases of the section 1983 claims in the first three counts of the amended complaint. These are wrongful acts. These wrongful acts further formed the basis of the wrongful probation ordered and implemented by the defendants. The wrongful probation was the "improper motive" or "improper means" envisioned by Blake. As such, the defendants, by implementing wrongfully this probation, knowingly and intentionally interfered with the contractual relationship then existing between Galen Institute and its students, of which relationship the defendants, as DHE employees, obviously must have been aware. Furthermore, this interference caused declining student enrollments at Galen, as supported by paragraph 87 of the Lattanzio affidavit.

E.   THE NINTH COUNT OF THE PLAINTIFFS' AUGUST 28, 2003 AMENDED COMPLAINT STATES A CAUSE OF ACTION, AND IS SUPPORTED BY EVIDENCE.

A state common law civil conspiracy consists of (1) a combination between two or more persons, (2) to perform a criminal or unlawful act or a lawful act by criminal or unlawful means, (3) an act performed by one or more of such persons pursuant to a scheme and in furtherance of the object, (4) which act results in damages to the plaintiff. Macomber v. Travelers Property and Casualty Corp., 261 Conn. 620, 647 (2000).

In the present action there are three defendants, all of whom are employed by the DHE.  The defendant Lewis, as the commissioner of the DHE, is the principal of the defendants Lerner and Zdanys.  Although agency normally is a question of fact, its existence or nonexistence may be determined as a matter of law.  Agency is a fiduciary relationship resulting from the manifestation of consent by one person to another that the other shall act on her behalf and subject to her control, and consent by the other so to act.  Id. at footnote 12.  The defendants Lerner's and Zdanys' actions would be imputed to the defendant Lewis by virtue of their agency relationship, thus creating the required combination.

F.  THE ELEVENTH AND TWELFTH COUNTS OF THE PLAINTIFFS' AUGUST 28, 2003 AMENDED COMPLAINT STATE A CAUSE OF ACTION, AND ARE SUPPORTED BY EVIDENCE.

The basic elements of a cause of action for defamation are: (1) the defendant made a defamatory statement; (2) the defamatory statement identified the plaintiff to a reasonable third person; (3) the defamatory statement was published to a third person; and (4) the plaintiff's reputation suffered injury as a result of the defamatory statement.  QSP, Inc. v. The Aetna Casualty and Surety Company, 256 Conn. 343, 356 (2001).  Defamation or disparagement of a business' goods or services may be considered trade libel, and is recognized as a species of defamation.  Id. at 358, 359, note 15.  Trade defamation is the knowing publication of a false matter derogatory to the plaintiff's business calculated to prevent or interfere with

relationships between the plaintiff and others to its detriment.  Id.
at 358.  Where the statement impugns the basic integrity or
creditworthiness of a business, an action for defamation lies, and
injury is conclusively presumed.  Id.  Communication of a statement
among a person's supervisors, and which statement had been included
in such person's personnel file, constitutes publication.  Torosyan
v. Boehringer Ingelheim Pharmaceuticals, Inc., 234 Conn. 1, 28
(1995).  Publication may be demonstrated by the disclosure of such
statement to an entity's own agent, employee or officer, even where
the entity is a corporation.  Id. at 28.  Privilege may constitute a
defense to an action for defamation.  Id. at 28.  Whether a
disclosure is privileged is a question of law; even where such
privilege exists, it cannot be abused by the malicious dissemination
and broadcasting of the defamatory matter.  Id. at 28.

The eleventh count of the amended complaint states that the
defendant Zdanys placed in the Galen file at the DHE offices a public
evaluation report containing Zdanys' statement identifying the
plaintiffs James J. Lattanzio, Jr. and Sandra J. Lattanzio as having
been "abusive, threatening and intimating to students."  These
citations of incidents of threats and intimidation were based
exclusively on unverified telephonic complaints.  Connecticut
Regulations section 10a-22k-13(c) requires any complaints to be made
and submitted in writing.  Zdanys' reliance on these unsubstantiated
and unverified telephonic complaints, which reliance was placed in

13

violation of regulations section 10a-22k-13(c), exhibited a reckless disregard by Zdanys as to the truth of such complaints, which complaints were incorporated into his statement that the Lattanzios had abused, threatened and intimidated students.  Any claim of absolute privilege by Zdanys is undermined by such reckless disregard as to the truth of such statement.  See <u>Torosyan v. Boehringer Ingelheim Pharmaceuticals, Inc.</u>, 234 Conn. 1, 29 (1995).  See also the Lattanzio affidavit, paragraphs 29-30, and letter of Jonas Zdanys dated May 18, 2001 demonstrating that a factual controversy exists as to the issues of the statement, its publication, and the application of any absolute privilege.  Furthermore, placement of such statement in the Galen file, open to the public, at the DHE offices constitutes publication.  See <u>id</u>. at 28.

The defendants place much emphasis on the invocation of the doctrine of absolute privilege, claiming that the defendant Zdanys' placement of his letter reiterating complaints that James J. Lattanzio, Jr. and Sandra J. Lattanzio had been "abusive, threatening and intimidating," to students was privileged.

An absolute privilege attaches to relevant statements made during administrative proceedings which are quasi-judicial in nature. <u>Lega Siciliana Social Club, Inc. v. St. Germaine</u>, 77 Conn. App. 846, 856 (2003).  The salient factors to consider in analyzing the applicability of the doctrine of absolute privilege for quasi-judicial proceedings are whether the agency can (1) exercise judgment

and discretion; (2) hear and ascertain facts; (3) make binding orders and judgments; (4) affect personal or property rights of private persons; (5) examine witnesses and hear the litigation of issues on hearing; and (6) enforce its decisions or impose penalties. Kelly v. Bonney, 221 Conn. 549, 567 (1992). Other salient factors include whether (1) the agency has the power to determine facts and apply the appropriate law to those facts; (2) the agency has subpoena power; (3) the complainant is required to "certify that the information he forwarded to the state was true and correct;" (4) the complaint must be made under oath; (5) the agency has the power to render a preliminary inquiry into probable cause; (6) the accused person, or subject of the agency action, has the right to a hearing; and (7) the subject of the agency action has the right to examine the investigating agency's records, be represented by counsel, call and cross-examine witnesses, and present oral argument. Id. at 567, 569-70. Finally, the absolute privilege attaches only to "relevant statements made during administrative proceedings which are quasi-judicial in nature." Id. at 566. Stated similarly, in order to qualify for such an absolute privilege, there must be a quasi-judicial proceeding pending at the time the statement is made. Lega Siciliana Social Club, Inc. v. St. Germaine, 77 Conn. App. 846, 857 (2003).

In the present action the defendant Zdanys placed his conclusory statement in the Galen Institute file at the DHE offices that

plaintiffs James J. Lattanzio, Jr. and Sandra J. Lattanzio had been "abusive, threatening and intimidating" to students.  The defendant Zdanys conceded in his May 18, 2001 letter report to Galen Institute that such determination was made based upon unconfirmed, unsworn anonymous telephonic complaints constituting "hearsay."

Such a statement should not receive protection behind the shield of absolute privilege for manifold reasons.  First and foremost, Zdanys' statement was not made "during administrative proceedings which are quasi-judicial in nature."  See Kelley, 221 Conn. at 566. There was no proceeding pending at all when such statement was made. Furthermore, there was no opportunity for the Lattanzios or any of the defendants to examine witnesses, or confront and cross-examine the complainants on which the Zdanys statement was based; indeed, such complainants were anonymous.  Still further, the DHE has no power to hear and ascertain facts, make binding judgments, subpoena witnesses, and render a preliminary inquiry into probable cause, irrespective of the subject matter.  Finally, and perhaps must importantly, the DHE does not require a certification that "the information forwarded to the state was true and accurate," or that the complaint be made under oath.  The Zdanys statement was made in a context devoid of the attributes of a proceeding containing the hallmarks of constitutional protections inherent in the aforestated factors.  Particularly relevant was the fact that the complaints were

16

oral, unsworn, unconfirmed, devoid of any inquiry by Zdanys of probable cause, and made by anonymous callers.

Since the statement at issue fails to comport with many of the aforementioned factors, the doctrine of absolute privilege does not apply as a matter of law.

F.   THE THIRTEENTH AND FOURTEENTH COUNTS OF THE PLAINTIFFS' AUGUST 28, 2003 AMENDED COMPLAINT STATE A CAUSE OF ACTION, AND ARE SUPPORTED BY EVIDENCE.

In order for a plaintiff to prevail on a theory of intentional infliction of emotional distress, he must establish that (1) the actor intended to inflict emotional distress or that he knew or should have known that emotional distress was the likely result of his conduct, (2) the conduct was extreme and outrageous; (3) the actor's conduct was the cause of the plaintiff's distress; and (4) the emotional distress sustained by the plaintiff was severe. Carrol v. Allstate Insurance Company, 262 Conn. 433, 442-3 (2003). The elements of a cause of action in negligent inflection of emotional distress are (1) the actor's conduct created an unreasonable risk of injury; (2) the plaintiff's distress was foreseeable; (3) the emotional distress was severe enough that it might result in illness or bodily harm; and (4) the actor's conduct was the cause of such distress.   Id. at 444.   There is no distinction between bodily injury and emotional distress only.   The only requirement is that the distress might result in illness or bodily harm.   Id. at 448.

17

The interference with the COMTA accreditation onsite inspection and concomitant accreditation denial directly impaired significantly the plaintiff Galen Institute's ability to compete by virtue of its inability to secure for its students federally guaranteed student loans.  This fact has resulted in damages to this plaintiff, as borne out by paragraphs 63 and 87 of the Lattanzio affidavit.  Galen Institute would have grown had it been able to qualify for such financial programs.  This incessant harassment by Lewis and her minions, particularly Lerner and Zdanys, as well as the concomitant loss of one's business, was the cause of significant emotional distress on the part of the individual plaintiffs, as recounted in paragraph 91 of the Lattanzio affidavit.

H.  THE FIFTEENTH, SIXTEENTH, SEVENTEENTH, EIGHTEENTH, NINETEENTH AND TWENTIETH COUNTS OF THE PLAINTIFFS' AUGUST 28, 2003 AMENDED COMPLAINT STATE A CAUSE OF ACTION, AND ARE SUPPORTED BY EVIDENCE.

The plaintiffs concur that the basic elements of a cause of action in negligence are duty, breach of duty, causation and damages.  However, the plaintiffs disagree with the repeated assertions expressed in section IIIL of the defendants' memorandum that "state officers and employees who are accused of negligence, are of course, as noted above, protected by sovereign immunity."  The defendant "state officers and employees" are named in the present action in their individual capacities, not their official capacities.  This court dismissed from the original complaint those counts asserting claims against these defendants in their official capacities.  The

18

amended complaint of August 28, 2003, filed pursuant to said order of dismissal, now asserts claims against these defendants solely in their individual capacities.  State officials sued in their individual capacities are "persons" for purposes of section 1983 and may be held personally liable for damages thereunder based upon actions taken in their official capacities.  Hafer v. Melo, 502 U.S. 21, 23 (1991).  "To establish personal liability in a section 1983 action, it is enough to show that the official, acting under color of state law, caused the deprivation of a federal right."  Id. at 25.

These defendants owed to the plaintiff Galen Institute, LLC a duty of exercising reasonable care in their official actions toward Galen, just as they do toward other persons in all other facets of the defendants' lives.  These defendants do not suddenly shed the obligation, upon assuming their official functions, of exercising reasonable care toward their regulated subjects.  To adopt such a position, as impliedly countenanced by the defendants, would permit state officials to mistreat with impugnity their subjects, and again insulate themselves from responsibility therefor behind the shelter of sovereign immunity.  The fifteenth, sixteenth, seventeenth, eighteenth, nineteenth and twentieth counts of the amended complaint all seek to render these defendants properly responsible for their acts of discrimination and selective enforcement, which, if not found to be intentional, at the very least were the product of reckless indifference, feckless administration of the statutes and regulations

19

pertaining to occupational schools, and negligence.  Since the doctrine of sovereign immunity does not apply to the actions of these defendants perpetrated under color of state law, in their individual capacity, no state or federal statute or public policy precludes an action of negligence against state officials, acting under color of law, in their individual capacity.

IV.   CONCLUSION

For all of the foregoing reasons, including the accompanying Local Rule 56(a)(2) statement, affidavit and supporting exhibits, the plaintiffs Galen Institute, LLC and Sandra J. Lattanzio urge the court to deny in toto the defendants' motion for summary judgment.

                          Plaintiffs Galen Institute, LLC
                          and Sandra J. Lattanzio


By_____
                          Thomas A. Amato
                          357 East Center Street
                          Manchester, CT 06040
                          Telephone (860) 643-0318
                          Federal bar number CT 14221
                          Their Attorney


This is to certify that a copy of the foregoing Memorandum of Law was mailed on April 28, 2005 to the following counsel and pro se parties of record:

M. J. McCarthy
Office of the Attorney General
55 Elm Street
Hartford, CT 06106

James J. Lattanzio, Jr.
Galen Institute, LLC
1025 Silas Deane Highway
Wethersfield, CT 06109

_____
Thomas A. Amato