GALEN INSTITUTE, LLC ET AL.  )    CASE NO. 3:02-CV-1637   FILED

v.                           )

VALERIE LEWIS ET AL.         )    APRIL 26, 2005

2005 APR 29 P 2: 50

U.S. DISTRICT COURT
BRIDGEPORT, CONN

## PLAINTIFFS' LOCAL RULE 56(a)(2) STATEMENT

A.   PLAINTIFFS' RESPONSES TO DEFENDANTS' CLAIMS OF FACT

1.  Admitted.

2.  Admitted.

3.  Admitted.  The plaintiffs challenge this paragraph on the ground that the defendants cite no supporting evidence.

4.  Admitted.  The plaintiffs challenge this paragraph on the ground that the defendants cite no supporting evidence.

5.  Admitted.  The plaintiffs challenge this paragraph on the ground that the defendants cite no supporting evidence.

6.  Admitted.  The plaintiffs challenge this paragraph on the ground that the defendants cite no supporting evidence.

7.  Admitted.

8.  Admitted.

9.  Denied as to the phrase "DHE evaluation team."  The remaining portions of paragraph 9 are admitted.  See Affidavit of James J. Lattanzio, Jr. at ¶1.

10. Admitted.

11. Admitted.

12. Denied as to the word "purporting." The remaining portions of paragraph 12 are admitted. See Affidavit of James J. Lattanzio, Jr. at ¶2.

13. Denied as to the phrases "a national accrediting organization recognized by the United States Department of Education," and "efforts to attain national accreditation." All other portions of paragraph 13 are admitted. See Affidavit of James J. Lattanzio, Jr. at ¶3.

14. Admitted.

15. Admitted.

16. Admitted.

17. Denied. See Affidavit of James J. Lattanzio, Jr. at ¶4.

18. Admitted.

19. Admitted.

20. Admitted.

21. Denied as to the phrase "did not address the issues outlined in the DHE's letters." All other portions of paragraph 21 are admitted. See Affidavit of James J. Lattanzio, Jr. at ¶5.

22. Denied as to the word "restating" and to exhibit I, being a copy of a letter from DHE. All other portions of paragraph 22 are admitted. See Affidavit of James J. Lattanzio, Jr. at ¶6.

23. Admitted.

24. Denied as to exhibit K being the letter from DHE.  All other portions of paragraph 24 are admitted.  See Affidavit of James J. Lattanzio, Jr. at ¶7.

25. Admitted.

26. Denied as to exhibit L being the letter from DHE.  All other portions of paragraph 26 are admitted.  See Affidavit of James J. Lattanzio, Jr. at ¶8.

27. Denied as to Exhibit L being the letter from DHE.  All other portions of paragraph 27 are admitted.  See Affidavit of James J. Lattanzio, Jr. at ¶9.

B.  PLAINTIFFS' DISPUTED ISSUES OF MATERIAL FACT

1.  At all relevant times it is the commissioner or his designee that is empowered to oversee and regulate Galen Institute.  See C.G.S. section 10a-5.

2.  The only power and/or authority the commissioner or her designee possesses is set forth entirely within C.G.S. sections 10a-22a et seq. and Connecticut Regulations section 10a-22x.

3.  From January, 1999 to about July, 2000 William Pizutto and Patricia Santoro were the "designees" of the commissioner who oversaw Galen Institute.  See Affidavit of James J. Lattanzio, Jr. at ¶10.

4.    In 1998 Galen Institute began the planning process to gain accreditation.  See Affidavit of James J. Lattanzio, Jr. at ¶11.

5.    Accreditation is mandatory in the state of Connecticut for massage schools, and must be obtained within thirty-three months after the school first offers its curriculum.  C.G.S. section 20-206b.

6.    One criterion for accreditation, prior to making formal application for accreditation, is that a school must be operational for at least twenty-four continuous months prior to making application for accreditation.  See Affidavit of James J. Lattanzio, Jr. at ¶12.

7.    Galen Institute was on a very precise time line to become accredited by April 1, 2002.  See Affidavit of James J. Lattanzio, Jr. at ¶13.

8.    Once in each of the years 1998, 1999 and 2000 William Pizzuto and Patricia Santoro, designees of the commissioner Valerie Lewis, conducted onsite evaluation inspections of Galen Institute.  See Affidavit of James J. Lattanzio, Jr. at ¶14.

9.    William Pizzuto and Patricia Santoro are obligated to conduct said onsite inspection strictly in accordance with C.G.S. section 10a-22b(d).  See C.G.S. section 10a-22b(d).

10.  The statutes require an "inspection" to include all records, files, and forms used by Galen Institute, as well as

4

the school's catalog and enrollment contract and the schools
meeting of its educational goals and outcomes, and require
denial of authorization if the school is not in full compliance
with said statutes.  See C.G.S. section 10a-22d(a).

11. In each of the years 1998, 1999 and 2000 Galen
Institute was authorized and then re-authorized and therefore
all statutory requirements were met.  See Affidavit of James J.
Lattanzio, Jr. at ¶15.

12. During the years 1999 and 2000, when any revisions to
the school's operations were submitted to the DHE, those
revisions by statute must be approved by DHE.  See Affidavit of
James J. Lattanzio, Jr. at ¶16.

13. In or about July, 2000 Brenda Lerner began to oversee
Galen Institute operations.  See Affidavit of James J.
Lattanzio, Jr. at ¶17.

14. In or about July, 2000 Galen Institute filed its
application to DHE for re-authorization in 2001.  See Affidavit
of James J. Lattanzio, Jr. at ¶18.

15. In or about February, 2001 Brenda Lerner and Patricia
Santoro, as designees of commissioner Lewis, conducted a re-
authorization inspection at Galen Institute, Wethersfield.  See
Affidavit of James J. Lattanzio, Jr. at ¶19.

16. At the conclusion of said inspection, Lerner and Santoro met with James Lattanzio in his office at Galen Institute.  See Affidavit of James J. Lattanzio, Jr. at ¶20.

17. Brenda Lerner informed Lattanzio at said conference that "all" of the student records and files were "not being kept properly."  See Affidavit of James J. Lattanzio, Jr. at ¶21.

18. Brenda Lerner informed Lattanzio that the school's catalog and enrollment content were not in compliance with the law.  See Affidavit of James J. Lattanzio, Jr. at ¶22.

19. Brenda Lerner informed Lattanzio that the school's "grading system" was not in compliance with the law.  See Affidavit of James J. Lattanzio, Jr. at ¶23.

20. Brenda Lerner informed Lattanzio that Galen Institute's student filing system, grading system, catalog, admission policies and enrollment contract would have to be changed prior to re-authorization.  See Affidavit of James J. Lattanzio, Jr. at ¶24.

21. Each of the aforesaid items on Brenda Lerner's list was the same exact item that had been submitted to DHE, William Pizzutto and Patricia Santoro for all previous years, and approved by DHE as being in full compliance with state law.  See Affidavit of James J. Lattanzio, Jr. at ¶25.

22. DHE then provided Galen Institute with a report that required Galen to make these changes.  See Affidavit of James J. Lattanzio, Jr. at ¶26.

23. All communications from DHE are assumed by school owners to come from commissioner Lewis or her designee.  See C.G.S. sections 10a-1 through 10a-22k.

24. All of said required changes that were imposed on Galen Institute were not set forth in any of the state statutes governing re-authorization.  See C.G.S. sections 10a-22a through 10a-22k.

25. There are no statutory requirements for any private occupational school to have a numerical grading system.  See Affidavit of James J. Lattanzio, Jr. at ¶27.

26. There are no statutory requirements for any private occupational school to keep student files in any specific manner such as those forced upon Galen Institute.  See Affidavit of James J. Lattanzio, Jr. at ¶28.

27. In addition to the numerous and costly changes imposed on Galen Institute, the 2001 DHE re-authorizing letter report acknowledged that Galen Institute was being authorized only for one year, in part due to verbal complaints to the DHE.  See letter of Jonas Zdanys dated May 18, 2001. Exhibit 1,  See Affidavit of James J. Lattanzio, Jr. at ¶29.

28. Said letter report stated that the DHE had received telephone calls from students, parents and staff that reported that Jim Lattanzio and Sandra Lattanzio had been "abusive, threatening and intimidating" to students.  See letter of Jonas Zdanys dated May 18, 2001. Exhibit 1.

29. DHE accepted telephone calls, and then negatively acted upon them towards Galen Institute.  See letter of Jonas Zdanys dated May 18, 2001. Exhibit 1.

30. The only statute that empowers DHE to act on any formal complaint requires said complaint to be written.  See Connecticut Regulations section 10a-22k-13(c).

31. DHE acted illegally regarding said oral complaints. See Connecticut Regulations section 10a-22k-13(c).

32. James J. Lattanzio, Jr. and Sandra J. Lattanzio have never threatened or intimidated anyone, and were prevented from confronting any accusers of same, due to the DHE actions.  See Affidavit of James J. Lattanzio, Jr. at ¶30.

33. Subsequent to said February, 2001 inspection, Galen Institute effected the required changes, and DHE re-authorized Galen Institute for one year.  See Affidavit of James J. Lattanzio, Jr. at ¶31.

34. Re-authorization by DHE requires DHE to verify that Galen Institute is in full compliance with all the required statutes.  See C.G.S. section 10a-22d.

35. In or about May, 2001, James J. Lattanzio, Jr. met with Brenda Lerner and Patricia Santoro at DHE, and at said meeting Lattanzio specifically questioned each required change.  See Affidavit of James J. Lattanzio, Jr. at ¶32.

36. Brenda Lerner stated that all schools are required to have a numerical grading system.  See letter of Patricia A. Santoro dated April 4, 2001. Exhibit 2, See Affidavit of James J. Lattanzio, Jr. at ¶33.

37. Brenda Lerner stated that all schools are required to have an objective admissions policy.  See letter of Patricia A. Santoro dated April 4, 2001. See Affidavit of James J. Lattanzio, Jr. at ¶34.

38. James Lattanzio, in or about May, 2001, showed Brenda Lerner at the DHE offices that the only other massage training school in Connecticut did not have such policies, evidenced by a past and current catalog from such school, and several copies of said school's prior grading sheets.  See Affidavit of James J. Lattanzio, Jr. at ¶35.

39. Brenda Lerner was project officer at all times relevant to this complaint for Connecticut Center for Massage Therapy (hereinafter referred to as "CCMT").  See Affidavit of James J. Lattanzio, Jr. at ¶36.

40. Brenda Lerner told James Lattanzio at said conference that Galen's admissions criteria had to be objective, yet she

knew that CCMT's admissions criteria were based in part on subjective criteria, and she permitted such discrepancy to persist. See Affidavit of James J. Lattanzio, Jr. at ¶37.

41. Brenda Lerner told James Lattanzio at said meeting that Galen's grading system had to be numerical, yet she knew CCMT's was not. See Affidavit of James J. Lattanzio, Jr. at ¶38.

42. James Lattanzio then proferred a CCMT catalog and actual student transcript that clearly showed that CCMT used a Satisfactory/Unsatisfactory grading system, and also had a highly subjective admissions policy. See Affidavit of James J. Lattanzio, Jr. at ¶39.

43. Brenda Lerner refused to look at CCMT material or to satisfy the questions of James Lattanzio, and thereupon concluded the meeting. See Affidavit of James J. Lattanzio, Jr. at ¶40.

44. In or about February and March, 2002 Brenda Lerner and Patricia Santoro conducted onsite inspection(s) of Galen Institute. See Affidavit of James J. Lattanzio, Jr. at ¶41.

45. At the conclusion of said inspections Brenda Lerner and Patricia Santoro met with me at the Galen Wethersfield facility, and with Sandra Lattanzio and me at the Galen Stamford facility. Brenda Lerner reported that once again the school catalog, enrollment contract, student records and Galen policies were not

10

in compliance with the law.  See Affidavit of James J.
Lattanzio, Jr. at ¶42.

46. With respect thereto, said school catalog, enrollment
contract, student records and school policies were the same
documents that Brenda Lerner and Patricia Santoro had reviewed,
and the commissioner had approved, in April-May, 2001.  See
Affidavit of James J. Lattanzio, Jr. at ¶43.

47. In a subsequent report in April, 2002 from DHE, more
changes were required to be made to Galen's catalog, enrollment
contract and grading system.  See Affidavit of James J.
Lattanzio, Jr. at ¶44.

48. In response to DHE demands, Galen Institute was forced
to adopt a numerical grade transcript, as well as to effect
changes to its catalog, enrollment agreement and filing system,
all of which required changes were not mandated by state statute
and not required to be adopted by competitor CCMT.  See
Affidavit of James J. Lattanzio, Jr. at ¶45.

49. On March 25, 2002 Brenda Lerner and Timothy Tynan
appeared unannounced at the Galen Institute facilities in
Wethersfield.  See Affidavit of James J. Lattanzio, Jr. at ¶46.

50. In March, 2002 Galen Institute was proceeding with its
ongoing and now 2½ year accreditation process with a non-
federally recognized agency known as the Commission on Massage

11

Therapy Accreditation (hereinafter COMTA), a private accrediting business.  See Affidavit of James J. Lattanzio, Jr. at ¶47.

51. COMTA had scheduled a site visit for March 25 and 26, 2002.  See Affidavit of James J. Lattanzio, Jr. at ¶48.

52. COMTA was not a federally recognized accrediting agency, and therefore DHE could not accept its accreditation in lieu of DHE re-authorization.  See Affidavit of James J. Lattanzio, Jr. at ¶49.

53. It is the policy of DHE to only "observe" accreditation visits of "federally recognized" accrediting agencies.  See Deposition of Valerie Lewis, page 36, lines 7-11. Exhibit 3.

54. DHE has never attended an accrediting visit at any other school visited by an agency not federally recognized.  See Affidavit of James J. Lattanzio, Jr. at ¶50.

55. This "observation policy" was admitted by Valerie Lewis and Brenda Lerner in their depositions. See Deposition of Valerie Lewis, page 36, lines 7-13, Exhibit 3, and page 71, lines 20-21, Exhibit 4; and Deposition of Brenda Lerner, page 63, line 22, page 99, line 25, and page 100, lines 1-8. Exhibit 5.

56. Upon entering the school on March 25, 2002 Brenda Lerner ordered all student files be brought into the room reserved and occupied by COMTA.  See Affidavit of James J. Lattanzio, Jr. at ¶51.

57. By COMTA policy, Galen staff was precluded from being present in the room, except periodically to bring in requested materials.  See Affidavit of James J. Lattanzio, Jr. at ¶52.

58. James Lattanzio had several opportunities to enter the room, in which instances he observed Brenda Lerner and Timothy Tynan sitting at the large table in the center of the room with the four COMTA visitors, going through the accordion folders that contained, by classes, the student records with the COMTA onsite team.  In a subsequent court trial disclosure statement involving COMTA, COMTA admitted to possessing copies of student files, attendance and grade reports.  See Affidavit of James J. Lattanzio, Jr. at ¶53.

59. James Lattanzio observed the COMTA team participating in the reviewing of the Galen files that Brenda Lerner ordered into the room.  See Affidavit of James J. Lattanzio, Jr. at ¶53.

60. The aforementioned acts of Brenda Lerner, under the power of Valerie Lewis, prevented Galen from controlling what records and files COMTA gained access to, and exceeded the scope of the materials that COMTA required Galen to provide as part of the accreditation process.  See Affidavit of James J. Lattanzio, Jr. at ¶54.

61. Brenda Lerner and Timothy Tynan also ordered a meal during the day of March 25, 2002, for which Galen paid.  See Affidavit of James J. Lattanzio, Jr. at ¶55.

62. Brenda Lerner and Timothy Tynan shared information regarding the student files, because in the COMTA report was wording virtually identical to that of Brenda Lerner in the DHE report of May 5, 2002.  See Affidavit of James J. Lattanzio, Jr. at ¶56.

63. Brenda Lerner state that "it was policy of DHE whenever visiting a school, to pull all student files and review them." See Deposition of Brenda Lerner, page 101, lines 6-14, page 110, lines 1-7. Exhibit 6.

64. Jonas Zdanys, associate commissioner, stated that there were no other policies of DHE, such as the aforesaid policy Lerner claimed existed.  See Deposition of Jonas Zdanys, page 30, lines 20-25, and page 31, lines 1-25. Exhibit 7.

65. The aforesaid acts of Brenda Lerner during the COMTA visit are inconsistent with the statutes and policies that govern DHE operations.  See C.G.S. sections 10a-1 through 10a-22k.

66. Brenda Lerner actively participated in said COMTA visit, operating outside of DHE policy.  See Affidavit of James J. Lattanzio, Jr. at ¶57.

67. Brenda Lerner provided access to confidential student information to COMTA, which information COMTA did not need in conducting its visit, nor had a legal right to have access to. See Affidavit of James J. Lattanzio, Jr. at ¶58.

68. Brenda Lerner failed to provide known and factual information regarding Galen Institute to COMTA, in support of accreditation for Galen, such as financial status.  See Affidavit of James J. Lattanzio, Jr. at ¶59.

69. One of Brenda Lerner's primary responsibilities to Galen Institute was the review and approval of its financial statements every year.  See Deposition of Brenda Lerner, page 35, lines 5-10. Exhibit 8.

70. COMTA reported to Galen Institute that COMTA could not verify the financial status of Galen Institute.  See Affidavit of James J. Lattanzio, Jr. at ¶59.

71. COMTA reported to Galen that in "not one" of the graduate student files that it examined did any student have even 500 hours of attendance.  See Affidavit of James J. Lattanzio, Jr. at ¶60.

72. COMTA and subsequent DHE "student attendance" issues were virtually identical, having the very same math calculations in the COMTA and DHE reports.  See Affidavit of James J. Lattanzio, Jr. at ¶60.

73. As a partial direct result of DHE's acts and interference with Galen's attempt to become accredited, Galen withdrew from said accreditation process.  See Affidavit of James J. Lattanzio, Jr. at ¶61.

15

74. As a partial and direct result of said DHE acts, Galen Institute was ultimately denied accreditation.  See Affidavit of James J. Lattanzio, Jr. at ¶62.

75. As a partial direct result of said DHE acts, Galen Institute has been financially damaged, including the decline in its growth.  See Affidavit of James J. Lattanzio, Jr. at ¶63.

76. In or about March, 2002 DHE sent Galen Institute a letter, which letter was the DHE report of the visit conducted by Brenda Lerner and Patricia Santoro, and which letter required Galen to "once again" effect substantial changes to its operating policies.  See letter of Patricia A. Santoro dated March 1, 2002. Exhibit 9.

77. Galen Institute effected the aforementioned changes, and so informed DHE thereof in writing On March 20, 2002.  See letter of Galen Institute dated March 20, 2002. Exhibit 10.

78. On April 5, 2002 Brenda Lerner and Patricia Santoro entered Galen Institute without warning, and informed the school director, Donna Pitts, that Galen was officially being placed on "probation."  See Affidavit of James J. Lattanzio, Jr. at ¶64.

79. Donna Pitts was provided with "certificates" marked in bold – "PROBATIONARY," and was instructed that these certificates had to be placed in public view at each school. See Affidavit of James J. Lattanzio, Jr. at ¶65.

80. On May 5, 2002, Brenda Lerner and Patricia Santoro also began copying all student files and records on the Galen copy machine. See Affidavit of James J. Lattanzio, Jr. at ¶66.

81. Said letter from DHE placing Galen Institute on probation failed to specify or provide any guidance to Galen as to how to effect the rescission of said probation. See letter of Jonas Zadanys dated April 5, 2002. Exhibit 11.

82. Said probationary assessment further prohibited, in part, Galen Institute from being accredited because it is an accreditation policy, as well as required by federal regulation, that a school that has been placed on probation by any state agency should not be granted accreditation, unless the accrediting agency has "overwhelming and mitigating" circumstances to accredit. See Affidavit of James J. Lattanzio, Jr. at ¶67.

83. The primary reason underlying DHE's placing of Galen Institute on probation was that Galen graduates were supposedly not receiving exactly 600 hours of instruction. See letter of Jonas Zadanys dated April 5, 2002. Exhibit 11.

84. In numerous communications to DHE, Galen Institute explained why said assessment was in error. See Affidavit of James J. Lattanzio, Jr. at ¶68.

17

85. DHE ignored said Galen Institute reply, Galen's approved policies and authorization.  See Affidavit of James J. Lattanzio, Jr. at ¶69.

86. By law DHE had fully reviewed and then approved all working elements of the Galen 600-hour program in March, 1999, 2000 and then in 2001.  See Affidavit of James J. Lattanzio, Jr. at ¶70.

87. For three consecutive years, DHE had approved the 600-hour program.  See Affidavit of James J. Lattanzio, Jr. at ¶71.

88. When Brenda Lerner was assigned as overseer of Galen Institute, she stated "almost everything" was "not in compliance."  See Affidavit of James J. Lattanzio, Jr. at ¶72.

89. DHE had approved Galen Institute's use of the federally approved and industry standard fifty-minute clock hour and ninety percent attendance graduating policy.  See Affidavit of James J. Lattanzio, Jr. at ¶73.

90. Galen Institute conducted its program and recorded attendance by "wall clock hour."  See Affidavit of James J. Lattanzio, Jr. at ¶74.

91. The "wall clock hour" would then need to be converted to "50 minute clock hour."  See Affidavit of James J. Lattanzio, Jr. at ¶75.

92. DHE approved said method of computing clock hours in 1999. See Affidavit of James J. Lattanzio, Jr. at ¶76.

93. DHE failed to convert the wall clock hour to actual clock credit hours. See Affidavit of James J. Lattanzio, Jr. at ¶77.

94. DHE also approved the Galen Institute completion policy in 1999, which policy was modeled after the federal policy of "90% of attendance must be completed" in order to graduate. See Affidavit of James J. Lattanzio, Jr. at ¶78.

95. DHE failed to apply the "90% completion policy" that DHE had previously approved, which approved policy translated to a minimum attendance of 540 hours needed to complete a 600 hour program. See Affidavit of James J. Lattanzio, Jr. at ¶79.

96. DHE then failed to review the documents filed with the Department of Public Health filed by Galen's competitor school, CCMT, which also had a 600 hour program, which documents filed by CCMT all indicated that their students completed the 600 hour program. See Affidavit of James J. Lattanzio, Jr. at ¶80.

97. DHE selectively singled out Galen Institute and applied to it criteria that it did not apply to other schools, specifically CCMT, while representing that it was the law. See Affidavit of James J. Lattanzio, Jr. at ¶81.

98. In an April, 2002 meeting with Jan Cordova and Debbie Brown, Massage Licensing supervisors from the Department of Public Health, Lattanzio communicated the aforementioned concerns, and confirmed that CCMT filed same such documents listing 600 hours for each form filed.  See Affidavit of James J. Lattanzio, Jr. at ¶82.

99. The Department of Public Health never questioned, nor did it ever reject any documents from Galen Institute regarding the licensure of Galen students.  See Affidavit of James J. Lattanzio, Jr. at ¶83.

100. Although Galen Institute communicated via a series of correspondence to DHE regarding the aforesaid matters, DHE all but ignored same, and furthermore failed to hold CCMT to the same standard.  See Affidavit of James J. Lattanzio, Jr. at ¶84.

101. In December, 2002 DHE Patricia Santoro and Yohang Rong inspected Galen Institute and officially reported all records, files, policies, catalogs, contracts and school policies to be in full compliance with laws and recommended non probationary re-authorization.  See Affidavit of James J. Lattanzio, Jr. at ¶85.

102. The aforesaid inspection and recommendations were based mostly and in part on the very same records that Brenda Lerner and the DHE had reviewed and ultimately rejected in

20

February, March and April, 2002.  See Affidavit of James J.
Lattanzio, Jr. at ¶86.

103. The wrongful placing of Galen Institute on probation
discouraged many potential students not to enroll at Galen.  See
Affidavit of James J. Lattanzio, Jr. at ¶87.

104. All of the aforesaid acts of Brenda Lerner, Valerie
Lewis and Jonas Zadanys and DHE have destroyed Galen's ability
to compete in the Connecticut massage therapy education market.
See Affidavit of James J. Lattanzio, Jr. at ¶88.

105. Galen Institute attributes the aforesaid acts, in
part, to the fact that the commissioner was a personal friend of
one L. Carole Woodbury, who also worked for and had a falling
out at Galen Institute.  See Affidavit of James J. Lattanzio,
Jr. at ¶89.

106. In February, 2003, Galen was inspected again by DHE
and issued a three year re-authorization until 2006.  See
Affidavit of James J. Lattanzio, Jr. at ¶90.

107. The acts of Lewis, Zdanys and Lerner have caused me
much psychological and emotional distress, including the mental
stress and agony of having to try to resuscitate the business
which I created.  I have observed numerous times during the past
three years the effects of same on my spouse, Sandra J.
Lattanzio.  I have observed her many times suffering from the
same stress and agony caused by these problems.  Sandra J.

21

Lattanzio is director of admissions of Galen Institute, and she is cognizant of all of these problems. See Affidavit of James J. Lattanzio, Jr. at ¶91.

                            Galen Institute, LLC and
                            Sandra J. Lattanzio


By_____
     Thomas A. Amato
     357 East Center Street
     Manchester, CT 06040
     Telephone (860) 643-0318
     Their Attorney


                            James J. Lattanzio, Jr.


By_____
     James J. Lattanzio, Jr.
     1025 Silas Deane Highway
     Wethersfield, CT 06109
     Telephone (860) 721-1904
     Pro Se