UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| GALEN INSTITUTE, LLC, ET AL, *Plaintiffs* | ) ) ) | CIVIL ACTION NO. 3:02 CV-1637(JCH) |
| v. | ) ) ) | |
| VALERIE LEWIS, ET AL *Defendants* | ) ) | MAY 27, 2005 |

### REPLY MEMORANDUM IN SUPPORT OF DEFENDANTS' REVISED MOTION FOR SUMMARY JUDGMENT

The defendants in above action respectfully submit this reply memorandum in response to the plaintiffs Sandra Lattanzio's and Galen Institute's opposition memorandum in opposition to motion for summary judgment. This memorandum was also adopted by plaintiff James Lattanzio.

## I. Discussion

**Plaintiffs' Equal Protection Claims (Counts 1, 2 & 3) Fail Because Plaintiffs Cannot Establish Neither Selective Treatment.**

The plaintiffs have failed to establish selective treatment as described in the defendants' revised memorandum in support of the Motion for Summary Judgment. Plaintiff Galen Institute ("Galen") is a non-accredited private occupational school authorized to operate under Connecticut State law and the regulations of the Connecticut Department of Higher Education ("DHE"). Plaintiff Lattanzio asserts that Galen was treated differently from the only other massage school in Connecticut at that time, Connecticut Center for Massage Therapy ("CCMT"). However, plaintiff Lattanzio ignores the fact that CCMT is a nationally accredited school, and,

under Connecticut law, DHE must accept the national accreditation in satisfaction of DHE's own evaluation process. ( Valerie Lewis Attachment[1] 10, Ex. L, p. 243,)

> Except for initial authorizations, the Commissioner of Higher Education shall accept institutional accreditation by an accrediting agency recognized by the United States Department of Education, in satisfaction of the requirements of this section and section 10a-22d, including the evaluation and attendance requirement, unless the commissioner finds reasonable cause not to rely upon such accreditation.

Conn. Gen. Stat. § 10a-22b(a). Although the plaintiffs compare Galen to CCMT, Galen lacks the accreditation and unlike CCMT must be evaluated on the basis of the other provisions of the Connecticut statutes and regulations regarding private occupational schools. The plaintiffs cannot establish a claim for unequal treatment under Village of Willowbrook v. Olech, 528 U.S. 562 (2000) or African Trade & Information Center, Inc. v. Abromaitis, 294 F.3d 355 (2nd Cir. 2002). Galen is treated the same as every other private occupational school in Connecticut.

### Plaintiffs' Substantive Due Process Claims (Counts 4, 5 and 6) Fail Because No Reasonable Fact Finder Could Conclude That Defendants' Actions "Shock The Conscience,"

On page three (3) of the plaintiffs' memorandum in opposition to the Motion for Summary Judgment, the plaintiffs complain that Galen was required to change the school's catalog, enrollment agreement, grading system and policies for two consecutive years. ( See plaintiffs brief p. 3) Although DHE's recommendations for the 2001 and 2002 evaluation site visit included requests to change the school's catalog, enrollment agreement, grading system and policies, the plaintiff Lattanzio agreed to make all changes requested and any changes that might be required later. (See Attachment 12, Ex. F, pp. 29-31, Ex. M, pp. 74-80) The plaintiffs further

---

[1] The Attachments referred to in this brief are the revised attachments submitted with the defendants Revised Motion for Summary Judgment unless otherwise indicated.

2

complain that DHE required changes in 2002 to the same sections of the catalog that DHE recommended changes to in 2001. DHE required those changes again because Galen neglected to make the changes in 2001. (See P. Santoro's Attach. 12, Ex. D, pp. 16-20, Ex. J, pp.57-63, Ex. F. 29-31)

The Plaintiffs fail to appreciate that DHE evaluate all schools pursuant to Conn. Gen Stat. § 10a-22b. For any private occupational school that has received accreditation by a national accrediting agency recognized by the United States Department of Education ("USDOE"), by law, DHE must accept the determination of that body. Had Galen received accreditation by such an agency recognized by the USDOE, then DHE would have been required by statute to accept such a determination. Galen Institute is not nationally accredited and therefore DHE must evaluate the school and program based upon Connecticut's statutes and regulations.

The plaintiffs have been unable to demonstrate that any of the actions by the defendants were illegal or unprofessional. As mentioned in the defendants' memorandum, the independent evaluators from the DHE team, Valerie Voner and Shirley Cooper, both verified that the DHE team members were professional, knowledgeable and objective in their evaluation of Galen. (See Affidavit of Shirley Cooper, Attachment 8, p.2 ¶ 12; Affidavit of Valerie Voner, Attachment 14, p. 2, ¶ 18) If the DHE members treated Galen so differently in their evaluations, why then did Galen agree to make any and all of the changes as recommended? (See Attachment 12, Ex. F, pp. 29-31, Ex. M, pp. 74-80) Galen had the opportunity to object to the recommendations, but in his April 20, 2001 and March 20, 2002 letters, Lattanzio agreed to all of the recommended changes. There was no claim in either of these letters that there was selective enforcement, indeed, because selective enforcement had not occurred. (See Attachment 12, Ex. F, pp. 29-31, Ex. L, pp. 72-73)

3

In reviewing the 2002 recommendations, some of the 2001 changes were not made by Galen and therefore were recommended again in 2002. In 2002, DHE again recommended changes to the catalog, enrollment agreement, grading system and admissions policies, but these were the same changes recommended in 2001 and accepted by the plaintiff Lattanzio, but never implemented. (See P. Santoro's Attach. 12, Ex. D, pp. 16-20, Ex. J, pp.57-63)

A review of the student files examined during the 2001 and 2002 site evaluations, revealed the repeated complaints of student files being incomplete. (See P. Santoro's Attach. 12, Ex. D, pp. 16-20, Ex. J, pp.57-63) Nowhere in Lattanzio's response to DHE in 2001 or 2002, did he complain of illegal, unprofessional or biased criticism. He did not complaint because the comments were accurate. In fact, Lattanzio stated in his April 2001 and March 2002 response letters that the student files are "<u>now complete</u>" (emphasis added) (See Attachment 12, Ex. F, p. 31, Ex. L, p. 73).

In paragraph 31 of James Lattanzio's Affidavit, plaintiff Lattanzio states that "Galen Institute, under the threat of revocation, effected all the required changes, and DHE re-authorized Galen Institute for an additional one year period . . . ." Lattanzio agreed to make all of the changes in his April 20, 2001 letter. The so-called "threat of revocation" letter was date May 118, 2001, almost a month later. (See Jonas Zdanys Attachment 15, Ex. B, pp. 16-18)

Lattanzio complained to DHE about the treatment the Galen received only <u>after</u> Galen received probationary authorization. The basis of the probation was the lack of documentation of student hours by the school. Under the school's standard enrollment agreement, Galen was to provide six hundred (600) hours of instruction. The evaluators were unable to confirm that Galen had provided those instructional hours to students. (See Attachment 9, Ex. J, pp. 64-67, Attachment 13, Ex. A, pp. 5-7) Additionally, Galen was required to notify the Department of

4

Public Health ("DPH") that students taking the national massage therapy exam had completed five hundred (500) hours of instruction. Evaluators were unable to verify that all students had completed the five hundred hours of instruction. (See Attachment 9, Ex. J, pp. 64-67, Attachment 13, Ex. A, pp. 5-7) These were legitimate inquiries by DHE.

### Plaintiffs' Claims For Tortious Interference With Contractual Relations And/Or Business Expectancy (Counts 7 & 8) Fail Because Plaintiffs Can Establish Neither Malice Nor Intentional Interference Without Justification

Plaintiffs' counts for Tortious Interference with a contractual interest and business expectancy must fail as there is no evidence that DHE interfered in any way with the plaintiffs' relationship with COMTA. In Lattanzio's affidavit (paragraph 59), he states that Brenda Lerner reviewed financial statements yearly for Galen. Ms. Lerner did review financial statements for private occupational schools as part of her duties at DHE. (See B. Lerner's Affidavit Attachment 9, p. 1, ¶ 7) Lattanzio's affidavit continues that "COMTA could not verify Galen's financials, even though Brenda Lerner was present. . . . ." (See J. Lattanzio Affidavit p. 13, ¶ 59) Ms. Lerner states in her affidavit that no one from COMTA ever asked her about Galen's financial. (See B. Lerner's Affidavit Attachment 9, pp. 3-4 ¶¶ 25 &26). DHE did nothing to misinform or mislead the COMTA officials. This statement is uncontroverted by Mr. Lattanzio's affidavit. COMTA may have failed to verify financials but their actions have nothing to do with the defendants in this action. There is simply no evidence that the defendants' intentionally interfered with the business relationship or contractual relationship between the plaintiffs and COMTA.

5

### Plaintiffs' Claims For Defamation (Counts 11 & 12) Fail Because Plaintiffs Cannot Establish The Elements Of A Viable Cause Of Action For Defamation.

Section. §10a-22k-13 of the Conn. Agency Regs., requires that no school shall have a policy nor shall act in any manner which discourages or prohibits the filing of inquiries or complaints regarding the school's operation. (See Attachment 1[2]) Based upon information received, DHE sought to provide information to the plaintiffs while looking to the interests of students attending school. DHE had received telephonic complaints in the form and complaints in some of the student surveys received during the site visits. Thus Dr. Zdanys' letter of May 18, 2001 upon which the defamation count is based, states that DHE received complaints and that statement was truthful.

---

[2] Attachment 1 is attached to this document.

**II.    Conclusion**

For all the foregoing reasons, and such other further reasons as may appear at argument on the matter, the defendants respectfully urge the Court grant them summary judgment on all of plaintiffs' claims.

DEFENDANT

RICHARD BLUMENTHAL
ATTORNEY GENERAL

BY:  *[signature]*
M.J. McCarthy
Assistant Attorney General
Federal Bar No. ct09031
55 Elm Street, P.O. Box 120
Hartford, CT  06141-0120
Tel.:  (860) 808-5210
Fac.:  (860) 808-5385
Email:  mj.mccarthy@po.state.ct.us

## CERTIFICATION

I hereby certify that a copy of the foregoing *Reply to the Plaintiffs' Memorandum in Opposition to the Motion for Summary Judgment* was mailed, first class postage prepaid, this 27th day of May, 2005 to:

James Lattanzio
c/o Galen Institute
1025 Silas Deane Highway
Wethersfield, CT 06109

Thomas Amato, Esq.
357 East Center Street
Manchester, CT 06040

M.J. McCarthy
Assistant Attorney General
Federal Bar No. ct09031



1 of 7 DOCUMENTS

REGULATIONS OF CONNECTICUT STATE AGENCIES

*THIS DOCUMENT IS CURRENT THROUGH THE 05/17/05 ISSUE OF THE CONN. LAW JOURNAL*

TITLE 10A STATE SYSTEM OF HIGHER EDUCATION
BOARD OF GOVERNORS FOR HIGHER EDUCATION
APPROVAL OF PRIVATE OCCUPATIONAL SCHOOLS REQUIRING CERTIFICATION

Regs., Conn. State Agencies § 10a-22k-13 (2005)

Sec. 10a-22k-13. Complaints and inquiries

(a) No school shall have any policy nor shall act in any manner which discourages or prohibits the filing of inquiries or complaints regarding the school's operation with the commissioner.

(b) The school shall clearly display in a location visible to students and the public:

(1) The statement that the school does not have any policy nor acts in any manner which discourages or prohibits the filing of inquiries or complaints regarding the school's operation with the commissioner; and

(2) the school's procedures for resolving complaints regarding the school's operation, including the filing of inquiries or complaints with the commissioner.

(c) Any complaint regarding the school's operation shall be submitted in writing to the commissioner. Upon receipt of such written complaint the commissioner or his designee shall inform in writing both the school and the complainant regarding said receipt and shall give both parties twenty days to resolve the complaint.

If the complaint is resolved within the twenty-day period, both parties shall inform the commissioner or his designee. If the complaint is not resolved within the twenty-day period, the complainant shall inform the commissioner or his designee.

In unresolved cases, the commissioner or his designee shall attempt to mediate the complaint which includes the evaluation of the complaint, the determination whether there is any violation of existing statutes or regulations which may be cause for revocation or emergency action as provided under Section 10a-22k-9 or administrative penalties as provided under Section 10a-22k-12, and the submission of a written proposed resolution of the complaint to both parties. If either party does not accept the proposed resolution of the complaint, the commissioner or his designee shall inform both parties concerning their right to pursue a resolution of the complaint in Connecticut Superior Court or through other legal means. The evaluation procedures in unresolved cases shall include, but not to be limited to the following: (1) interview with the complainant unless waived by the complainant, (2) review of all pertinent documents, and (3) visit to the school against which the written complaint has been filed.

Amendment published in Conn. Law Journal October 7, 1997, effective July 25, 1997.