UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| GALEN INSTITUTE, LLC, ET AL. | : | |
| Plaintiffs, | : | |
| | : | CIVIL ACTION NO. |
| v. | : | 3:02-CV-1637 (JCH) |
| | : | |
| VALERIE LEWIS, ET AL., | : | |
| Defendants. | : | SEPTEMBER 28, 2005 |

**RULING  RE: DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT [DKT. NO.  82]**


The plaintiffs, the Galen Institute, LLC, James Lattanzio, and Sandra Lattanzio, initiated this action against defendants Valerie Lewis, Brenda Lerner, and Jonas Zdanys, regarding their conduct as employees of the Connecticut Department of Higher Education ("DHE"), in their individual capacities [Dkt. No. 39].  The plaintiffs assert claims, pursuant to 42 U.S.C. § 1983, for the violation of their equal protection and due process rights under the United States Constitution, for conspiracy under 42 U.S.C. § 1985, and for various violations of state law against the defendants arising out of contacts between the DHE and the Galen Institute with regards to the authorization by the DHE of the Galen Institute as a private occupational school.  The defendants bring this motion for summary judgment pursuant to Fed.R.Civ.P. 56 [Dkt. No. 82].

**I. Factual Background**

For the purposes of the instant motion, the court accepts fact undisputed by the parties as true and resolves disputed facts in favor of the plaintiffs where the plaintiffs provide evidence to support their allegations.  The Galen Institute, LLC ("Galen") is a private occupational school in Wethersfield, Connecticut that offers instruction in massage therapy.   Galen received its initial authorization from the DHE to offer an

instructional program in massage therapy in 1999.   James Lattanzio is the sole

member of Galen, and Sandra Lattanzio is a director of Galen.  The individual

defendants, at the time of the conduct at issue, were all employed by the DHE and

were responsible for overseeing the re-authorization process for Galen.

Pursuant to Conn. Gen. Stat. sections 10a-22a et seq., the DHE is empowered

to oversee and regulate the operation of private occupational schools.  Under Conn.

Gen. Stat. section 10a-22d(a), authorization must be renewed annually for the first

three years of the operation of a private occupational school.  Authorization for the

operation of a private occupational school is granted upon application to the DHE,

which is made pursuant to Conn. Gen. Stat. section 10a-22b.  The requirements and

application criteria are stated in the section 10a-22b and in DHE regulations, as

enacted under Conn. Gen. Stat. section 10a-22k.  See Conn. Agencies Regs. §§ 10a-

22k-3 et seq.   Under Conn. Gen. Stat. section 10a-22b, a DHE evaluation team

conducts inspections of applicant schools and determines whether:

> (1) the quality and content of each course or program of instruction,
> training or study shall reasonably and adequately achieve the stated
> objective for which such course or program is offered; (2) the school has
> adequate space, equipment, instructional materials and personnel for the
> instruction offered; (3) the qualifications of directors, administrators,
> supervisors and instructors shall reasonably and adequately assure that
> students receive education consistent with stated objectives for which a
> course or program is offered; (4) students and other interested persons
> shall be provided with a catalog or similar publication describing the
> courses and programs offered, course and program objectives, length of
> courses and programs, schedule of tuition, fees and all other charges and
> expenses necessary for completion of the course or program, cancellation
> and refund policies; (5) upon satisfactory completion of the course or
> program, each student shall be provided appropriate educational
> credentials by the school; (6) adequate records shall be maintained by the
> school to show attendance and grades, or other indicators of student
> progress, and standards shall be enforced relating to attendance and

student performance; (7) the applicant school shall be financially sound and capable of fulfilling its commitments to students; and (8) any student housing owned, leased, rented or otherwise maintained by the applicant school shall be safe and adequate.

Conn.Gen.Stat. § 10a-22b. A more detailed statement of these standards is included in the DHE regulations. See Conn. Agencies Regs. §§ 10a-22k-3. Based upon these criteria, the evaluation team submits a written report to the Commissioner of Higher Education that either recommends authorization or nonauthorization, and that may include "recommendations to improve the operation of the applicant school." Id.

According to the plaintiffs, in July 2000, Galen filed an application for bre-authorization in 2001. In February 2001, Brenda Lerner and Patricia Santoro, as DHE designees, conducted a re-authorization inspection of Galen. Following the inspection, Lerner, then a senior associate at the DHE, met with James Lattanzio and informed him that Galen needed to make changes to its student catalog, its grading system, record keeping system, admission policies, and enrollment agreement to be in compliance with the law. Plaintiff's 56(a)(2) Statement, ¶ 17-20 [Dkt. No. 88]. The concerns that Lerner communicated in person to Lattanzio were also included in a report sent to Galen that conditioned re-authorization upon complying with the proposed changes. Id. at ¶ 22. According to the plaintiffs, each of the areas for which Lerner found that revision was required were exactly the same as they had been when they were inspected and approved during the previous year. Id. at ¶ 21. Galen contends that the mandatory revisions were not required by the governing statutes or regulations. For example, the plaintiffs argue that there is no statutory requirement that private occupational schools employ a numerical grading system. Id. at ¶ 24-26. The plaintiffs

claim to have complied with the required changes. Id. at ¶ 33.

In May 2001, the DHE re-authorized Galen for one year and explained to Galen, in a letter from Jonas Zdanys, the associate commissioner for academic affairs at the DHE, that the authorization was limited to one year because the DHE had received telephone calls from students, parents, and staff that reported that James and Sandra Lattanzio had been "abusive, threatening, and intimidating" to students.  Id. at ¶ 28. The Lattanzios deny having ever threatened anyone, and the plaintiffs contend that the DHE illegally acted on the telephonic complaints as it only has statutory authority to act on formal, written complaints.  Id. at ¶ 30-32.

According to the plaintiffs, also in May 2001, James Lattanzio met with Lerner to discuss the required changes.  Lattanzio claims that Lerner stated at the meeting that all schools are required to have a numerical grading system and an objective admissions policy.  According to Lattanzio, he demonstrated to Lerner that the Connecticut Center for Massage Therapy ("CCMT"), "the only other massage training school in Connecticut," did not have such policies.  Id. at ¶ 38-43.  According to Lattanzio, Lerner refused to look at the CCMT materials that he produced.  Id.

In February 2002, Lerner and Santoro visited Galen to perform another re-authorization site visit.  In March 2002, the DHE wrote to Galen outlining concerns arising from the site evaluation, such as concerns related to teacher training, establishing a uniform numerical grading system, Galen's class size and facilities, the school's enrollment agreement, poorly maintained student records, required catalog revisions, and unlicensed teaching personnel.  Defendants' 56(a)(1) Statement, ¶ 10; Santoro Affidavit, Att. 12, Ex. J [Dkt Nos. 98-99].  The letter required Galen to submit a

written response with evidence that the required revisions had been completed.  Id.

According to the plaintiffs, the school catalog, enrollment contract, student records, and

school policies at issue were the same as those that were approved in 2001.  On March

20, 2002, James Lattanzio responded to Galen in writing, representing that Galen had,

among other changes, revised its grading system and made sure that its student files

were complete with attendance and grades.  Plaintiff's 56(a) Statement, Lattanzio

Affidavit, Ex. 10.

On March 25, 2002, Lerner and Thomas Tynan, another DHE employee,

accompanied visitors from the Commission on Massage Therapy Accreditation

("COMTA") on an inspection of Galen.   Separate from its DHE approval, Galen had

independently sought accreditation from COMTA, a "private accrediting business."

Plaintiff's 56(a) Statement, ¶ 50.  The plaintiffs contend that COMTA is not "federally

recognized" and that, while it is the policy of the DHE to observe accreditation visits of

federally recognized accrediting agencies, it had never before attended an accrediting

visit of a non-federally recognized agency.  Id. at ¶¶  53-55.

During the COMTA inspection, the DHE staff members reviewed Galen's student

files.  According to the plaintiffs, during the inspection of the files, the DHE staff

members shared with COMTA information and records that the COMTA visitors would

not have otherwise seen, in violation of DHE policy, and the DHE staff also withheld

other information from COMTA that would have been beneficial to Galen, and,

consequently, the DHE staff's actions contributed to COMTA's denial of accreditation.

Id. at ¶¶ 57-74.  The plaintiffs also claim that, during their visit, Lerner and Tynan

caused Galen to pay for their meal expenses.

On April 5, 2002, the DHE issued to Galen a ninety day probationary certificate of authorization.  A letter from Zdanys accompanying the certificate explained that during the March 25, 2002 inspection, the DHE found that the school had incomplete student records and that it did not have documentation showing that the students had received the 600 "clock hours" of instruction for which they had contracted under the enrollment agreement, and thus the school had not met "all conditions for authorization."  Motion for Summary Judgment, Zdanys Affidavit, Att. 15, Ex. D.

On April 25, 2002, James Lattanzio wrote to the chairman of the Board of Governors of Higher Education, requesting that the DHE require Lewis, the DHE commissioner responsible for Galen, to recuse herself because of a potential conflict of interest arising out of her acquaintance with Carole Woodward, a terminated employee of Galen.

Throughout the summer of 2002, Galen and the DHE corresponded about Galen's duties to comply with the DHE's requests and its degree of compliance.  The plaintiffs claim that, in its previous authorizations, the DHE had approved of Galen's use of a "fifty-minute" clock hour, in contrast with a "sixty-minute" clock hour, and of the same 600 hour program that it found objectionable in the spring of 2002.   In December 2002, following a site visit to Galen that included a review of Galen's student records, the DHE found that Galen was in compliance with its statutory requirements and issued a certificate of authorization that was valid until February 2003.  In February 2003, Galen received a three year re-authorization until 2006.

The plaintiffs contend that the individual defendants, all of whom are DHE staff, caused Galen to make costly and unnecessary changes to its program and materials by

6

applying standards to Galen that it did not apply to other massage therapy schools, namely CCMT, and that the defendants' acts were motivated by Lewis's friendship with the terminated employee.  The plaintiffs contend that the imposition of probation caused financial damage to Galen and prevented it from being accredited by other entities.  The Lattanzios also claim that the acts of the individual defendants caused them much emotional and psychological distress.

## II.    LEGAL STANDARD

Summary judgment is appropriate only when no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); Hermes Int'l v. Lederer de Paris Fifth Ave, Inc., 219 F.3d 104, 107 (2d Cir. 2000). The moving party bears the burden of showing that no genuine factual dispute exists. Carlton v. Mystic Transp., Inc., 202 F.3d 129, 133 (2d Cir. 2000) (citing Gallo v. Prudential Residential Servs., Ltd. P'ship, 22 F.3d 1219, 1223 (2d Cir. 1994)).   When reasonable persons applying the proper legal standards could differ in their responses to the questions raised on the basis of the evidence presented, the question is best left to the jury.  Sologub v. City of New York, 202 F.3d 175, 178 (2d Cir. 2000).

Once the moving party has met its burden, in order to defeat the motion the nonmoving party must "offer such proof as would allow a reasonable juror to return a verdict in his favor." Graham v. Long Island R.R., 230 F.3d 34, 38 (2d Cir. 2000).  "Only when that proof is slight is summary judgment appropriate." Id.  A party may not rely "on mere speculation or conjecture as to the true nature of the facts to overcome a Summary Judgment Motion." Lipton v. The Nature Company, 71 F.3d 464, 469 (2d Cir. 1995) (quoting Knight v. U.S. Fire Ins. Co., 804 F.2d 9, 12 (2d Cir. 1986)).  Additionally,

a party may not rest on the "mere allegations or denials" contained in his pleadings. Goenaga v. March of Dimes Birth Defects Found., 51 F.3d 14, 18 (2d Cir. 1995); see also Ying Jing Gan v. City of New York, 996 F.2d 522, 532 (2d Cir. 1993) (holding that party may not rely on conclusory statements or an argument that the affidavits in support of the Summary Judgment Motion are not credible).

## III. Discussion

### A. Equal Protection Claims

The plaintiffs state claims pursuant to section 1983 of Title 42 of the United States Code against each of the individual defendants for violating their equal protection rights under the United States Consititution.  The plaintiffs argue that the defendants selectively enforced standards against Galen that were not enforced against other occupational schools, namely CCMT; acted without rational basis and without legal authority in requiring Galen to make changes to its program and materials that had previously been approved; and that the defendants' acts were motivated by the "ill will" of the defendant Lewis, who sought retribution against Galen for its dismissal of an acquaintance employee.

"[W]here the plaintiff alleges that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment," she states a claim that her rights pursuant to the Equal Protection Clause have been violated.  Village of Willowbrook v. Olech, 528 U.S. 562, 564 (2000) (per curiam).  The Supreme Court has held that the Equal Protection Clause protects individuals from "intentional and arbitrary discrimination."  Id. (quoting Sioux City Bridge

Co. v. Dakota County, 260 U.S. 441, 445 (1923)).  "To prevail on a claim of selective enforcement, plaintiffs in this Circuit traditionally have been required to show both (1) that they were treated differently from other similarly situated individuals, and (2) that such differential treatment was based on impermissible considerations . . . ." Harlen Assocs. v. Inc. Vill. of Mineola, 273 F.3d 494, 499 (2d Cir. 2001)(internal quotation omitted). A plaintiff must show "not only irrational and wholly arbitrary acts but also intentional disparate treatment." Giordano v. City of New York, 274 F.3d 740, 751 (2d Cir. 2001)(internal quotation marks omitted)(emphasis in the original).

The Second Circuit recently clarified the first prong of this test.  In order for a plaintiff in a "class of one" equal protection case to demonstrate treatment different from that experienced by similarly situated individuals, he must "show that: (i) no rational person could regard the circumstances of the plaintiff to differ from those of a comparator to a degree that would justify the differential treatment on the basis of a legitimate government policy; and (ii) the similarity in circumstances and difference in treatment are sufficient to exclude the possibility that the defendant acted on the basis of a mistake."  Neilson v. D'Angelis, 409 F.3d 100, 105 (2d Cir. 2005).

With respect to the second prong of the test, "malicious or bad faith intent to injure a person" is one such impermissible consideration.  Id.  That there was "no rational basis for the difference in treatment," Bizzarro v. Miranda, 394 F.3d 82, 86 (2d Cir. 2005), may also satisfy the second prong of a "class of one" equal protection claim. Whether a governmental action is irrational or arbitrary turns not on whether the action was correct but focuses instead "on whether the [governmental] official's conduct was rationally related to the accomplishment of the work of the agency."  Id. at 88-89.

9

The plaintiffs have argued that Galen received differential treatment than CCMT, another massage therapy school in Connecticut.  In response to the plaintiffs' argument that Galen was held to a different standard than CCMT, the defendants argue in their pleadings that CCMT, unlike Galen, is a nationally accredited school.  Under Conn. Gen. Stat. section 10a-22b(a), the DHE must accept accreditation by an "accrediting agency recognized by the United States Department of Education . . . in satisfaction of" the authorization requirement for private occupational schools.  Conn. Gen. Stat. § 10a-22b(a).  Thus, the defendants argue, CCMT is not "similarly situated" to Galen and thus the disparate treatment of the two schools by the DHE does not support Galen's selective treatment claim.  If it were in fact true that CCMT was nationally accredited and, as such, was not subject to DHE inspection, the court would find that the two schools are not similarly situated for the purposes of an equal protection claim. However, the defendants have not included this assertion regarding CCMT in their Rule 56(a)(1) Statement, and thus the plaintiffs have not been provided an opportunity to admit or deny, on the basis of fact, whether CCMT is nationally accredited. See Local Rule 56 ("There shall be annexed to a motion for summary judgment . . . a concise statement of each material fact as to which the moving party contends there is no genuine issue to be tried.").  Therefore, this court cannot find that there is no material issue as to whether Galen is similarly situated to CCMT.

Nonetheless, the plaintiffs' equal protection claims fails because they have not demonstrated that the defendants' actions were irrational or arbitrary.  Galen has not shown, under the standard of Bizzarro, that the defendants' actions toward Galen were arbitrary and irrational.  The statutory scheme of Conn. Gen. Stat. section 10a-22a et

seq. establishes a regulatory scheme under which agents of the DHE have discretion to periodically review the operation of a private occupational school and require that it enact specific policies and affect specific changes to bring it into compliance with the DHE's interpretation of its governing statutes and regulations. See Conn. Agencies Regs. §§ 10a-22k-3 ("The commissioner or his designee shall review all applications and may require the filing of additional information by the applicant"); § 10a-22k-4 ("The report shall include the findings of the evaluation team, recommendations for improvement, if any, and a recommendation for authorization or nonauthorization . . . .The commissioner shall review the report of the evaluation team and may consult any state agency for assistance . . . . [T]he commissioner shall, in writing, advise the applicant of authorization or nonauthorization.  In the event of nonauthorization, the reasons therefor shall be given and the applicant may request in writing of the board a hearing . . . ."); § 10a-22k-7("Renewal shall not be approved if the commissioner determines that the school fails to meet the conditions of its most recent authorization.").  As noted above, the criteria for the evaluation of private occupational schools are listed in Conn. Gen. Stat. section 10a-22b as well as Conn. Agencies Regs. section 10a-22k-5.

Each of the requirements imposed on Galen by the DHE in its 2001 and 2002 evaluations can be rationally related to the operative evaluative criteria.  Several of the conditions imposed by the DHE are specifically required by the DHE's regulations. See e.g., Conn. Agencies. Regs. § 10a-22k-5 ("A "clock hour" or "hour" of instruction shall be defined as a period of sixty minutes with a minimum of fifty minutes of instruction . . . .The program content and length shall be not less than the education and training

essential for employment in the field for which the program is offered.").  Other

requirements, such as the requirement to use a numerical grading system in place of a

pass/fail system, can be explained in reference to the requirement that a "uniform

system of grading criteria shall be used by the school and published in its catalog."  Id.

The plaintiffs have not demonstrated any specific instance in which the DHE's

requirements cannot be rationally related to any of the evaluative criteria, and the court

does not find any.  That, as the plaintiffs point out, some of Galen's materials were

approved one year, but required to be revised the next, does not necessarily imply that

the required revisions were irrational or not required by law.  The authorization scheme,

which requires periodic re-authorization, especially in the first few years of a school's

existence, countenances the possibility that an evaluation team will make findings and

suggest revisions that a previous evaluation team had overlooked.  A reasonable jury

could not conclude that the defendants' conduct in conducting its 2001 and 2002

evaluations was not "rationally related to the accomplishment of the work of the

agency," or that it  did not "serve the legitimate goals" of the DHE, and thus the court

cannot conclude that the defendants' actions were arbitrary or irrational.  Bizzaro, 394

F.3d at 88-89.

In addition, the plaintiffs have not demonstrated that the defendants' actions

were motivated by malice or an intention to treat Galen selectively.[1]  The plaintiffs here

---

[1] It remains unclear whether a plaintiff must prove that an irrational or arbitrary decision against him was motivated by animus or malice in order to prove that his right to equal protection was violated.  See Bizzarro, 394 F.3d at 88; Harlen Assocs., 273 F.3d at 500.  To the extent that malice represents another way of demonstrating irrational or arbitrary treatment, the plaintiffs have failed to meet their evidentiary burden in support of their equal protection claims.

claim that malice can be inferred from the fact that Valerie Lewis, the DHE

commissioner responsible for Galen, was acquainted with the former director of Galen's

Stamford branch, who was terminated by Galen in 2001.  Apart from raising this specter

of a conflict of interest on Lewis's part, the plaintiffs have not produced any evidence of

bad faith or malice that would suggest that this acquaintance actually represented a

conflict of interest, or that this potential conflict actually caused Lewis to treat Galen in a

selective manner, nor have they demonstrated how any bad faith on Lewis's part could

be attributed to the other individual defendants.  See e.g., Bizzaro, 394 F.3d at 87

(finding no evidence of malice in internal investigation against correctional officers

because if "the motivation to punish is to secure compliance with agency objectives,

then by definition the motivation is not spite, or malice, or a desire to get someone for

reasons wholly unrelated to any legitimate state objective.")(internal quotation omitted);

Hayut v. State University of New York, 352 F.3d 733, 754 (2003)(finding no evidence

that the "individual defendants embarked on any obstructive scheme, or that the

allegedly differential treatment . . . was either intentional or lacked a rational basis.");.

Consequently, the plaintiffs have not produced evidence sufficient to support the claim

that the individual defendants violated their equal protection rights.

### B. Substantive Due Process

The plaintiffs have failed to produce evidence establishing substantive due

process claims under the United States Constitution against the defendants as well.

The plaintiffs claim that the defendants' conduct violated their substantive due process

rights by depriving them of their interest in their economic livelihood.  "The substantive

component of the Due Process Clause is violated by executive action only when it can

properly be characterized as arbitrary, or conscience shocking, in a constitutional sense." County of Sacramento v. Lewis, 523 U.S. 833, 847 (1998)(internal quotation omitted). "For state action to be taken in violation of the requirements of substantive due process, the denial must have occurred under circumstances warranting the labels 'arbitrary' and 'outraegeous.'" Natale v. Town of Ridgefield, 170 F.3d 258, 262 (2d Cir.1999). "A decision can only be considered arbitrary for federal constitutional purposes where . . . it had no basis in fact." Harlen Assocs, 273 F.3d at 501. "Substantive due process standards are violated only by conduct that is so outrageously arbitrary as to constitute a gross abuse of governmental authority." Natale, 170 F.3d at 263.

As discussed above, the defendants' conduct at issue cannot be considered arbitrary, and the plaintiffs have not produced evidence sufficient for a reasonable jury to find that the conditions imposed on Galen have no basis in fact. Accordingly, the plaintiffs' substantive due process claims must fail.

### C. 42 U.S.C. § 1985

The plaintiffs have failed to establish a claim for a conspiracy under section 1985 of Title 42 of the United States Code as well. To state a claim under § 1985(3),[2] a plaintiff must allege (1) a conspiracy (2) for the purpose of depriving a person or class of persons of the equal protection of the laws, or the equal privileges and immunities under the laws; (3) an overt act in furtherance of the conspiracy; and (4) an injury to the plaintiff's person or property, or a deprivation of a right or privilege of a citizen of the

---

[2] In their Amended Complaint, the plaintiffs refer to "42 U.S.C. § 1985(c)," which the court interprets as a reference to 42 U.S.C. § 1985(3).

United States.  Thomas v. Roach, 165 F.3d 137, 146 (2d Cir. 1999).[3]

The defendants argue, however, that the plaintiffs' claim, as it is lodged against them regarding conduct that they undertook as agents of the DHE, is barred by the intracorporate doctrine.  "[S]ince a corporation or other institution . . . can only act through its agents, a claim that the agents collectively agreed to take some unlawful action in the name and on behalf of the corporation is simply another way of saying that the corporation acted unlawfully and therefore does not satisfy the basic requirements of a conspiracy."  Ericson v. Syracuse University, 35 F.Supp.2d 326, 329 (S.D.N.Y. 1999)(dismissing section 1985(3) action under the intracorporate bar where the alleged actions supporting section 1985(3) claim were performed actions by defendants "in their positions as persons given official power."); see also Girard v. 94th St. & Fifth Ave. Corp., 530 F.2d 66, 72 (2d Cir. 1976)(dismissing claim for failure to state actionable conspiracy under section 1985(3) where the plaintiff failed to allege that the defendants "committed any act of a personal nature except in connection with the corporate affairs.").  Here, where the plaintiffs' factual allegations only concern the defendants' actions undertaken in furtherance of their DHE duties, the plaintiffs' section 1985 claim

---

[3]42 U.S.C.A. § 1985(3) provides in part:
If two or more persons in any State or Territory conspire ⋯ for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; or for the purpose of preventing or hindering the constituted authorities of any State or Territory from giving or securing to all persons within such State or Territory the equal protection of the laws; ⋯ in any case of conspiracy set forth in this section, if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages occasioned by such injury or deprivation, against any one or more of the conspirators.

fails to state an actionable conspiracy.

### C. State Law Claims

Under 28 U.S.C. § 1367(c)(3), "[t]he district courts may decline to exercise supplemental jurisdiction over a [state law] claim . . . if . . . the district court has dismissed all claims over which it has original jurisdiction."  28 U.S.C. § 1367(c)(3). While dismissal of the state claims is not absolutely mandatory, Rosado v. Wyman, 397 U.S. 397, 403-05 (1970); Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 n.7 (1988), the basis for retaining jurisdiction is weak when the federal claims are dismissed before trial.  United Mine Workers v. Gibbs, 38 U.S. 715, 726 (1966).  Accordingly, the court declines to exercise jurisdiction over the plaintiffs' state law claims, and those claims are dismissed.

## IV.    CONCLUSION

For the foregoing reasons, the defendants' Motion for Summary Judgment [Dkt. No.  82] is GRANTED.

**SO ORDERED.**

Dated this 28th day of September, 2005, at Bridgeport, Connecticut.


/s/ Janet C. Hall
Janet C. Hall
United States District Court Judge